UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Patrick Milan and CSN Sports, Inc., a Minnesota corporation, | Civil No. 09-3666 (DWF/TNL) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| William E. Colvin and Colvin Sports Network, Inc., | |
| Defendants. | |

_____

Elizabeth C. Borer, Esq., and Robert L. Meller, Jr., Esq., Best & Flanagan LLP, counsel for Plaintiffs.

Bruce G. Hearey, Esq., Daniel L. Messeloff, Esq., and Patrick R. Martin, Esq., Ogletree, Deakins, Nash, Smoak & Stewart, P.C.; and Darel F. Swenson, Esq., Law Offices of Darel F. Swenson, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on a motion for summary judgment brought by Defendants William E. Colvin ("Colvin") and Colvin Sports Network, Inc. ("Colvin Sports Network"). For the reasons set forth below, the motion is denied.

## BACKGROUND

Plaintiff Patrick Milan ("Milan") is the President and owner of Plaintiff CSN Sports, Inc. ("CSN Sports"). (Aff. of Patrick J. Milan ("Milan Aff.") ¶ 1.) Milan has

worked in the marketing business for twenty years, including seven years at Fallon Worldwide ("Fallon"). (*Id.* ¶ 2.) He incorporated CSN Sports in Minnesota in May 2007. (*Id.* ¶ 13.)

Colvin is President of Colvin Sports Network. (Aff. of William E. Colvin ("Colvin Aff.") ¶ 3.) Colvin has been involved in the sports marketing and sponsorship industry for approximately twenty-three (23) years. (*Id.* ¶ 5.) He created Colvin Sports Network in 2003 to recruit golfers for corporate sponsorships and marketing events. (*Id.* ¶ 9.)

Milan and Colvin first met in either 2001 or 2002. (Milan Aff. ¶ 4; Colvin Aff. ¶ 11.) At that time, Milan was working as a managing partner for Fallon, and Fallon had hired Colvin to assist with providing golf event implementation services for Milan's Fallon clients. (Milan Aff. ¶ 4.) Milan's employment at Fallon ended in September 2004, and Colvin contacted Milan about the two of them working together. (*Id.* ¶¶ 5-6.) The precise nature of their working relationship is at issue in the current action.

The parties agree that an oral agreement was reached that involved at least the sharing of revenue on clients that were mutually pitched, won, and worked on together. (Milan Aff. ¶ 6; Colvin Aff. ¶ 15.) Milan asserts that he and Colvin formed a partnership in which the profits of the new business would be equally shared. (Milan ¶ 6.) Milan also asserts that he and Colvin agreed that Colvin's historically exclusive clients and Milan's work as a consultant for IEG of Chicago were excluded from the partnership. (Milan Aff. ¶¶ 6, 10.) In contrast, Colvin asserts that Milan was to provide services for

Colvin Sports Network, and that Milan was to be paid for those services. (Colvin Aff. ¶ 15.)

Notwithstanding this disagreement, the parties worked together for several years, doing business as Colvin Sports Network. (Milan Aff. ¶¶ 14, 18.) Between 2005 and 2008, Colvin Sports Network provided services for various clients, some of which Colvin considered to be shared with Milan and some of which Colvin did not consider to be shared. (Colvin Aff. ¶ 16.) Based on Colvin's own understanding of whether or not specific clients were shared, Colvin either paid Milan an equal share of revenue received or made what Colvin describes as a "discretionary payment" to Milan. (*Id.* ¶ 17.) During this time, Colvin and Milan represented to the public in trade journals and marketing materials that they were partners. (Milan Aff. ¶¶ 14, 16.) Colvin also represented in correspondence with clients that he and Milan were partners. (*Id.* ¶ 15.)

In April 2008, Colvin and Milan met with John Goutell, a mutual business associate, to discuss expanding the business and bringing in Goutell. (Milan Aff. ¶ 30; Colvin Aff. ¶ 21.) It was during this meeting that Milan first discovered that Colvin Sports Network had been receiving management fees and commissions, not shared with or otherwise disclosed to Milan, from certain shared clients. (Milan Aff. ¶ 30.) These previously undisclosed fees were in addition to the revenue from those same clients that Colvin was sharing. (*Id.*) Milan also claims that Colvin has failed to disclose that Colvin Sports Network won business from certain clients from whom Colvin sought business with Milan's assistance. (*Id.* ¶¶ 36, 38.)

3

In the months following the April 2008 meeting, Colvin and Milan attempted to reach an agreement as to any additional compensation to which Milan was entitled as well as the structure of the parties' relationship going forward. (Colvin Aff. ¶¶ 23-25.) The parties' discussions were unsuccessful, however, and Milan filed suit in Minnesota state court on November 19, 2009. The Complaint asserts claims for breach of contract, fraud, and breach of fiduciary duty. Defendants removed the action to this Court and have now moved for summary judgment on all claims, arguing that because there was no meeting of the minds between Milan and Colvin, Plaintiffs cannot establish the existence of an enforceable agreement between the parties.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Breach of Contract

Plaintiffs assert a claim for breach of contract, alleging that the parties entered into an agreement to associate and carry on as equal co-owners of a sports marketing partnership for profit. Plaintiffs allege that Defendants breached the parties' agreement by failing to pay Plaintiffs their equal share of the partnership proceeds.

Defendants assert that they are entitled to summary judgment on Plaintiffs' breach of contract claim. Defendants assert that the formation of a contract under Minnesota law requires a meeting of the minds concerning the contract's essential elements. In addition, Defendants contend that enforcement of an oral agreement requires a party to establish the existence of definite and certain terms by clear and convincing evidence. Defendants contend that the essential terms have never been mutually agreed upon here, thus rendering the alleged oral agreement unenforceable as a matter of law. In particular, Defendants argue that it is undisputed that Milan and Colvin never agreed as to the scope

of the new business and how funds would be shared, and Plaintiffs therefore cannot put forth clear and convincing evidence of any definite or certain terms regarding those issues.

Plaintiffs respond that the contract law relied upon by Defendants is not controlling.  Plaintiffs assert that principles of partnership govern this dispute over partnership formation and breach of the partnership agreement.  Plaintiffs assert that whether or not a partnership exists is a question of fact, and that receipt of the profits from a business is prima facie evidence that the recipient is a partner in the business.  Plaintiffs argue that it is undisputed that Colvin and Milan shared profits of their business.  Plaintiffs further assert that the law provides a statutory default rule for allocation of partnership profits and losses as well as a definition as to when a business opportunity belongs to the partnership.

The Court concludes that Defendants are not entitled to summary judgment on Plaintiffs' breach of contract claim.  The Minnesota Uniform Partnership Act states the following:

> (a) Except as otherwise provided in subsection (b), the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership.
>
> (b) An association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this chapter.
>
> (c) In determining whether a partnership is formed, the following rules apply:

> (1) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.
>
> (2) The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived.
>
> (3) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment:
>
>> (i) of a debt by installments or otherwise;
>>
>> (ii) for services as an independent contractor or of wages or other compensation to an employee;
>>
>> (iii) of rent;
>>
>> (iv) of an annuity or other retirement or health benefit to a beneficiary, representative, or designee of a deceased or retired partner;
>>
>> (v) of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral; or
>>
>> (vi) for the sale of the goodwill of a business or other property by installments or otherwise.

Minn. Stat. § 323A.0202. The Minnesota Supreme Court has stated that "[e]xcept in those rare cases where the evidence is conclusive, partnership or no partnership is a question of fact." *Cyrus v. Cyrus*, 64 N.W.2d 538, 541 (Minn. 1954).

Here, Colvin admits at a minimum that he and Milan "arrange[d] . . . that we would share revenue on clients we mutually pitched, won, and worked on together."

(Colvin Aff. ¶ 15.) Milan was also identified as a partner in marketing and promotional materials. (Milan Aff. ¶¶ 14, 16 & Exs. 6, 10.) The Court therefore concludes that a fact issue exists as to whether or not Milan and Colvin formed a partnership.

The Court also respectfully rejects Defendants' alternative argument that even if a partnership existed, summary judgment should still be granted because a jury would be required to speculate as to the terms of the partnership. Defendants assert that Plaintiffs cannot establish that the parties agreed as to which clients belonged to the purported partnership, what revenue from those clients is partnership revenue, and the manner in which partnership funds would be distributed. If, however, a jury determines that a partnership was formed, then partnership law provides default provisions that govern these terms unless the partnership agreement provides otherwise. *See* Minn. Stat. § 323A.103(a).

Absent a different arrangement in the partnership agreement, "[e]ach partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits." Minn. Stat. § 323A.0401(b). Minnesota law also defines those business opportunities that belong to the partnership: "An opportunity that is closely related to the entity's existing or prospective line of business, would competitively advantage the partnership, and is one that the partnership has the financial ability, knowledge and experience to pursue is a partnership opportunity." *Triple Five of Minn., Inc. v. Simon*, 404 F.3d 1088, 1096 (8th Cir. 2005). The Court therefore concludes that, should the jury find that a partnership

existed, the jury will not be required to speculate to determine which clients belonged to the partnership and how partnership funds should be distributed between Milan and Colvin.

## III.   Fraud

Plaintiffs assert a claim for fraud, alleging that Defendants misrepresented that all partnership proceeds were shared equally. Plaintiffs assert that they reasonably relied on these misrepresentations "by trusting in Defendants to act in Plaintiffs' best financial interest as equal partners and by continuing to honor the Partnership agreement by sharing all proceeds with Defendants that were gained by Plaintiffs' efforts." (Compl. ¶ 42.)

Defendants contend that Plaintiffs' fraud claim should be dismissed as a matter of law. Defendants argue first that summary judgment is appropriate because Plaintiffs have failed to plead the fraud claim with sufficient particularity. In the alternative, Defendants assert that Plaintiffs cannot establish the elements of a claim for fraud. In particular, Defendants assert that because Plaintiffs cannot show evidence that the parties agreed as to how the alleged partnership's proceeds were to be calculated, Plaintiffs cannot prove that Defendants knew any statements regarding such proceeds were false.

Plaintiffs assert that Colvin made false representations about the profits of the partnership and the new business that the partnership won. Plaintiffs contend that Colvin knew he was not sharing profits equally from admittedly shared clients. Plaintiffs also

9

assert that Colvin's failure to disclose profits earned from new clients may constitute fraud because Colvin was under a duty to disclose such information.

Federal Rule of Civil Procedure 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). To satisfy this rule, a pleading that alleges fraud must set forth the "who, what, when, where, and how" of the alleged fraud. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997). To state a claim for common law fraud, Plaintiff must allege:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986).

The Court declines to grant summary judgment on Plaintiffs' fraud count on the basis of Defendants' argument that the Complaint failed to satisfy Rule 9(b). The purpose of Rule 9(b) is to facilitate a defendant's response to and preparation of a defense to charges of fraud. *Commercial Prop. Invs., Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 646 (8th Cir. 1995). Given the allegations in the Complaint, the fact that Defendants answered the Complaint in December 2009 and did not assert that the allegations were insufficient at that time, and the arguments and supporting affidavits submitted to the

Court by the parties in the current motion, the Court respectfully disagrees with Defendants' assertion that it is not reasonably able to respond and prepare a defense to Plaintiffs' fraud claim.

The Court also declines to grant summary judgment based on Defendants' argument that Plaintiffs cannot establish the elements of a fraud claim. While this is a close call, the Court concludes that at this stage it cannot find that, as a matter of law, Plaintiffs will be unable to establish the elements of fraud. Defendants argue that Plaintiffs cannot prove Defendants knew that any statements made regarding proceeds were false. Plaintiffs have, however, submitted evidence from which the jury could conclude at a minimum that Colvin wrote Milan checks on which Colvin represented that the check was for one-half of the proceeds for shared clients when Colvin knew that was not the case. The Court notes that the elements of reliance and damages caused by reliance may be difficult to prove at trial, but Defendants have not presented an argument for summary judgment as to those elements. Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiffs' fraud claim.

## IV.   Breach of Fiduciary Duty

Plaintiffs' third count is for breach of fiduciary duty. Plaintiffs allege that Defendants breached their duty as partners "by failing to account to the Partnership, neglecting to hold as trustee for the Partnership any profit or benefit derived in the conduct of the Partnership business, and competing with the Partnership in the conduct of the Partnership business." (Compl. ¶ 47.)

11

Defendants assert that because Plaintiffs cannot establish definite, enforceable terms of the purported partnership, and Plaintiffs' fiduciary duty claim is based on duties owed by partners, the breach of fiduciary duty claim fails.  In the alternative, Defendants contend that Plaintiffs have failed to come forward with evidence of Colvin's alleged self-dealing.  Defendants assert that the issue presented by Plaintiffs' breach of fiduciary duty claim is which clients were outside the scope of the purported partnership because they were Colvin's historically exclusive clients.  Defendants assert that Plaintiffs cannot establish that the parties agreed as to the list of historically exclusive clients and so cannot establish the breach of a fiduciary duty.

The Court disagrees.  As discussed above, whether or not Milan and Colvin formed a partnership is a question of fact.  Whether specific clients are Colvin's historically exclusive clients or should have been shared by the alleged partnership is also a question of fact.  *See Triple Five of Minn.*, 404 F.3d at 1096-97 ("The determination of whether an opportunity rightly belongs to the partnership is necessarily one of fact.").  Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiffs' breach of fiduciary duty claim.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion for Summary Judgment (Doc. No. [19]) is **DENIED**.


Dated:  May 20, 2011        <u>s/Donovan W. Frank</u>
                                  DONOVAN W. FRANK
                                  United States District Judge